UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSE CHAVEZ GOMEZ,

                            Petitioner,

v.

WILLIAM P. BARR, Attorney General of the
United States, et al.,

                            Respondents.

Case # 19-CV-6841-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* petitioner Jose Chavez Gomez ("Gomez"), an alien under an administratively final order of removal, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241"). ECF No. 1. He claims that his continued detention at the Buffalo Federal Detention Facility in the custody of the Department of Homeland Security ("DHS"), Immigrations and Customs Enforcement ("ICE") is unconstitutional. For the reasons set forth below, the request for a writ of habeas corpus is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Gomez is a native and citizen of Mexico, who entered the United States on an unknown date without having been admitted or paroled after inspection by an immigration officer.

On September 21, 1994, Gomez filed an Application for Relief with the former Immigration and Naturalization Service ("INS"), which was terminated on August 16, 1995, after Gomez failed to appear for an interview.

---

[1] The following factual summary is drawn from the Declaration of Brad Clancy, ECF No. 5 at 40–49 (all citations to ECF No. 5 reference ECF assigned pagination) and the DHS records attached as Exhibit A, *id.* at 50–108.

1

On October 24, 1997, Gomez's father filed a Petition for Alien Relative (Form I-130) on his behalf, which the INS approved on October 26, 1998. However, on January 22, 1998, the INS served Gomez with a Notice to Appear, charging him with being subject to removal from the United States, pursuant to Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being inspected or paroled. On August 13, 1998, an immigration judge ("IJ") ordered Gomez removed *in absentia*. Gomez failed to report for departure to Mexico on February 2, 1999.

In April 2003, Gomez was convicted of battery in Astatula, Florida, based on an incident in which Gomez's wife alleged that he slapped her several times across her face and called her insulting names. Gomez was sentenced to 12 months' probation and 29 weeks' participation in a batterer's intervention program.[2]

On October 17, 2006, Gomez filed an Application for Action on an Approved Application or Petition (Form I-824), which was denied on February 7, 2007.

On February 7, 2011, DHS officers encountered Gomez at the Village Court of Medina, New York, and placed him in custody pursuant to the outstanding removal order.

On February 11, 2011, Gomez's attorney successfully moved to reopen his immigration case. On March 14, 2011, she sought his release on bond. DHS initially denied the request but, on March 22, 2011, granted bond to Gomez in the amount of $5,000. Gomez posted bond the following day and was released.

On September 13, 2011, Gomez entered a guilty plea to second-degree harassment in the Town Court of Ridgeway, New York, and was fined $75.

---

[2] The Government has indicated that Gomez was arrested on several other occasions; however, no information was provided about the disposition of those charges. *See* ECF No. 5 at 7–8.

On September 19, 2013, Gomez's attorney filed a motion to administratively close his immigration proceedings and filed an Application to Register Permanent Residence or Adjust Status (Form I-485). The request was granted by an IJ on September 9, 2015.

On August 31, 2015, Gomez was arrested and charged with driving while intoxicated ("DWI") and related traffic violations. He pleaded guilty on February 18, 2016, in the Town Court of Barre, New York, to aggravated DWI and was fined $500.

On June 10, 2016, Gomez was arrested in Genesee County on a charge of second-degree unlawful imprisonment. A month later, Gomez was arrested and charged with second-degree burglary (illegal entry of a dwelling), first-degree criminal contempt (violating an order of protection—physical contact), and fourth-degree criminal mischief (intent to damage property). This set of charges arose out of an incident on July 10, 2016, in which Gomez entered a house by breaking a window in order to speak with his wife, who had an order of protection against him. He pleaded guilty on September 28, 2016, in the Town Court of Elba, New York, to second-degree criminal trespass and fourth-degree criminal mischief, in satisfaction of the charges from June 10, 2016, and July 10, 2016. He was sentenced to 180 days' imprisonment at the Genesee County Jail.

When he was released from jail on December 16, 2016, Gomez was taken into DHS custody for the reopening of his removal proceedings. That same day, DHS ordered Gomez detained and cancelled the previously posted bond.

Gomez requested a change in custody status pursuant to 8 C.F.R. § 236.1(c). On May 8, 2017, an IJ conducted a bond hearing and denied bond, finding that Gomez posed a danger to the community. The only record of the bond hearing is a check-the-box order; Gomez apparently did not appeal the IJ's decision.

On July 12, 2018, an IJ denied Gomez's applications for relief from removal and ordered him removed to Mexico. The Board of Immigration Appeals denied Gomez's appeal on December 14, 2018.

On December 27, 2018, Gomez filed a *pro se* petition for review along with a motion for stay of removal in the Second Circuit Court of Appeals. *See Gomez v. Barr*, No. 18-3813 (2d Cir. Dec. 27, 2018). Both applications remain pending as of the date of this Decision and Order. The forbearance policy currently prevents DHS from effectuating Gomez's removal to Mexico. *See In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).

On February 2, 2019, Gomez filed his first Section 2241 petition in this Court. *See Gomez v. Whitaker, et al.*, No. 18-CV-6900 (W.D.N.Y. Oct. 8, 2019). The petition was denied on October 8, 2019.

Gomez had two post-order custody reviews on May 17, 2019 and December 13, 2019 by ICE and ICE's Headquarters Removal and International Operations Unit ("HQRIO"), respectively. On both occasions, it was determined that Gomez may pose a danger to the community and should remain in custody.

Gomez commenced this proceeding by filing a Petition on November 7, 2019. ECF No. 1. The Government responded to the Petition by filing an Answer and Return, ECF No. 5 at 1–11; Memorandum of Law, ECF No. 5 at 12–38; and the Declaration of Brad Clancy, ECF No. 5 at 39–49, with Exhibit A, ECF No. 5 at 50–108. Gomez filed a Reply. ECF No. 6. The matter was transferred to the undersigned on March 12, 2020. ECF No. 7.

**DISCUSSION**

**I.     Statutory Basis for Gomez's Detention**

Gomez cites both 8 U.S.C. § 1226(c) ("Section 1226(c)") and 8 U.S.C. § 1231(a) ("Section 1231(a)") as the statutory basis for his detention. At the same time, however, he also disputes that he is detained under Section 1226(c) because he does not qualify as a criminal alien as defined in Section 1226(c)(1)(B). *See* ECF No. 6 at 5.

The Government asserts that Gomez is detained under Section 1231(a) because he is subject to an administratively final removal order and because the forbearance policy is not equivalent to a judicially ordered stay as referenced in 8 U.S.C. § 1231(a)(ii). *See* ECF No. 5 at 22–31. The Government contends that Gomez's detention is neither contrary to the applicable regulations nor unconstitutional and that he has received all the process to which he is entitled. *See id.* In the alternative, the Government argues, if this Court finds that Gomez's detention is governed by Section 1226(c), it has not become unreasonably prolonged so as to violate due process. *See id.* at 31–36.

In *Hechavarria v. Sessions*, the Second Circuit concluded that "Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review [in the court of appeals]." 891 F.3d 49, 56 (2d Cir. 2018). Because judicial review for those aliens is ongoing and their "removal is not inevitable," Section 1226 governs their detention. *Id.*

This Court has held that *Hechavarria* applies where, as here, the petitioner has sought judicial review of a removal order by the Second Circuit and has a pending motion for a stay of removal before that court. *See Thomas v. Whitaker*, No. 18-CV-6870, 2019 WL 1641251, at *3 (W.D.N.Y. Apr. 16, 2019). The fact that the Second Circuit has not yet granted the motion to stay removal "does not change the Court's analysis," because as the Government concedes, "under its

forbearance agreement with the Second Circuit, [Gomez] may not be removed while his motion to stay is pending." *Id.* "In light of [Gomez']s pending appeal and motion to stay, combined with the [G]overnment's forbearance policy, [he] is not 'immediately deportable' and his removal is 'not inevitable.'" *Id.* (quoting *Hechavarria*, 891 F.3d at 56–57). Consequently, Gomez is not being detained under Section 1231. *Id.* (citing *Sankara*, 2019 WL 266462, at *4-5 (collecting cases); *Anariba v. Shanahan*, 190 F. Supp. 3d 344, 349 (S.D.N.Y. 2016) (noting that district courts in the Second Circuit are split on issue)). Therefore, Gomez's claims based on Section 1231 and caselaw interpreting that statutory section are premature and will be dismissed without prejudice.

The Court further finds that Gomez is being detained under Section 1226(a), not Section 1226(c). The documents provided to the Court indicate that Gomez is subject to removal from the United States pursuant to INA Section 212(a)(6)(A)(i). ECF No. 5 at 81; *see also* ECF No. 5 at 69. INA Section 212(a)(6)(A)(i) provides as follows:

> An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

8 U.S.C. § 1182(a)(6)(A)(i).

Aliens detained under this statutory section do not fall within the class of "criminal aliens" identified in 8 U.S.C. § 1226(c)(1), which mandates the detention of any alien who:

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title.

8 U.S.C. § 1226(c)(1).

Accordingly, the Court concludes that Gomez is detained under the Attorney General's discretionary authority as provided in Section 1226(a), which states that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General—(1) may continue to detain the arrested alien; and (2) may release the alien on—(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole . . . ." *Id.*

## II. Merits of Gomez's Claims Based on Section 1226(a)

Reviewing Gomez's *pro se* pleadings leniently, *e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Court interprets them as raising two claims: (1) that the bond hearing on May 8, 2017, was constitutionally infirm because he, rather than the Government, bore the burden of proof, and (2) that he is entitled to another bond hearing because the length of his detention since the original hearing has become unreasonably prolonged. The Court finds that the second claim warrants habeas relief. Accordingly, it need not consider the first claim. *See*, *e.g.*, *Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) (because petitioner was "afforded complete relief by virtue of his first claim," it was "unnecessary to address [his] alternative grounds" for relief (citing *Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (where writ of habeas corpus was granted on one basis, declining to address alternative ground because "any relief [the petitioner] could obtain on that claim would be cumulative"); other citation omitted)).

Courts in this District have "evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *5

(W.D.N.Y. Feb. 27, 2019). "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.*; *see also Frederick v. Feeley*, No. 19-CV-6090, 2019 WL 1959485, at *3 (W.D.N.Y. May 2, 2019) (finding it unnecessary to determine precisely what process must be afforded to a noncitizen detained under Section 1226(c) because the petitioner's detention had not become unreasonably prolonged and thus his due process rights had not been violated). On the other hand, if the length of detention has been unreasonably prolonged, the Court "proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Hemans*, 2019 WL 955353, at *5 (alterations omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the [G]overnment has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

"Courts are not uniform in the factors they consider when evaluating whether detention has become unreasonably prolonged, but two factors of particular importance are (1) the length of detention and (2) the reason for delay." *Frederick*, 2019 WL 1959485, at *2 (citing *Fremont v. Barr*, No. 18-CV-1128, 2019 WL 1471006, at *4–5 (W.D.N.Y. Apr. 3, 2019); *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)).

Here, Gomez has been in DHS custody since December 16, 2016, approximately three years and three and a half months. In about a month, it will be three years from his original bond hearing on May 8, 2017, which he argues was constitutionally defective. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Fremont*, 2019 WL 1471006, at *4 (quotation omitted). Gomez's detention, whether measured from the original date he was taken into custody or the date of his initial bond hearing, has been

8

unreasonably prolonged. Indeed, this Court and others have found detentions significantly shorter in duration than Gomez's to be unreasonably prolonged. *See*, *e.g.*, *Gutierrez Cupido v. Barr*, No. 19-CV-6367, 2019 WL 4861018, at *3 (W.D.N.Y. Oct. 2, 2019) (detention for over sixteen months was "beyond the point at which courts find detention unreasonably prolonged" (collecting cases)).

With regard to the reason for the delay in Gomez's removal proceedings, the Court "rejects [the Government's] attempt to place blame for the delays on [Gomez]." *Id.* "The delays appear to be largely attributable to the normal administrative and appeals process, and the Second Circuit has made a distinction between aliens who have 'substantially prolonged [their] stay by abusing the processes provided to [them]' and those who have 'simply made use of the statutorily permitted appeals process.'" *Id.* (alteration in original) (quoting *Hechavarria*, 891 F.3d at 56 n.6). Accordingly, the "mere fact that [Gomez] has exercised his rights to pursue relief from removal 'does not, in itself, undermine a claim that detention is unreasonably prolonged.'" *Id.* (quoting *Brissett v. Decker*, 324 F. Supp. 3d 444, 453 (S.D.N.Y. 2018)).

Because Gomez's detention has been unreasonably prolonged, due process requires that he receive a bond hearing before an immigration judge with adequate procedural protections. *Id.* "Specifically, the Government, not [Gomez], must bear the burden of proving by clear and convincing evidence that continued detention is justified due to flight risk or dangerousness and that no less restrictive alternatives to detention would ameliorate that risk." *Id.*; *see also De Ming Wang v. Brophy*, No. 17-CV-6263, 2019 WL 112346, at *3 (W.D.N.Y. Jan. 4, 2019) ("Consistent with other courts in this Circuit, the Court further finds that Respondents must prove by clear and convincing evidence that Petitioner's continued detention is justified."), *appeal dismissed*, No. 19-571, 2019 WL 4199901 (2d Cir. Aug. 1, 2019); *Joseph v. Barr*, No. 19-CV-565, 2019 WL 3842359, at *9 (W.D.N.Y. Aug. 15, 2019) (same). Accordingly, Gomez's request for a writ of

habeas corpus is granted to the extent that he must be afforded an individualized bond hearing in which the Government must prove by clear and convincing evidence that his continued detention is justified because he is a flight risk or a danger to the community, and that there are no less restrictive alternatives to detention that would mitigate the Government's concerns. *Gutierrez Cupido*, 2019 WL 4861018, at *3.

Finally, on a procedural note, the Government argues that the only proper respondent is Jeffrey Searls, the Assistant Field Office Director of the ICE Buffalo Field Office, because he is the person having direct control over Gomez's detention. ECF No. 5 at 1. This Court has adopted "[t]he majority view in the Second Circuit [which] requires the immediate custodian, generally the prison warden, to be named as a respondent in core immigration habeas proceedings—*i.e.*, those challenging present physical confinement." *Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) (quotation omitted). Therefore, the other respondents will be dismissed from the case, and the Court's order will be limited to Respondent Searls. *Id.* (citing Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.")).

## CONCLUSION

For the foregoing reasons, the Petition is GRANTED IN PART and DENIED IN PART. The petition is granted against Respondent Searls and is denied with respect to the remaining respondents.

The Petition is GRANTED to the extent that Respondent Searls is directed to bring Gomez before an immigration judge for a bond hearing by April 21, 2020. At the bond hearing, Respondent Searls shall bear the burden of proving by clear and convincing evidence that Gomez's continued detention is justified on the basis that he is a flight risk or a danger to the community.

The immigration judge also must consider whether less restrictive alternatives to detention would ameliorate those concerns. Respondent Searls shall release Gomez unless the immigration judge finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure Gomez's appearance at future immigration proceedings and the safety of the community or any persons. If a bond hearing is not held by April 21, 2020, Respondent Searls shall release Gomez immediately with appropriate conditions of supervision. By April 24, 2020, Respondent Searls shall file a notice with this Court certifying either (1) that a bond hearing was held by the deadline, and the outcome thereof, or (2) that no bond hearing was held, and that Gomez was released with appropriate conditions of supervision.

The Petition is DENIED as to the claims based on Section 1231, as they are premature. Accordingly, the claims based on Section 1231 are DISMISSED WITHOUT PREJUDICE.

The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 6, 2020
      Rochester, New York

                              HON. FRANK P. GERACI, JR.
                              Chief Judge
                              United States District Court